**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **JOEL GALARZA,** | § | **CIVIL ACTION NO. 1:20-cv-00808** |
| **Individually and on Behalf of All Others** | § | |
| **Similarly Situated,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | |
| | § | **COLLECTIVE ACTION** |
| **ONE CALL CLAIMS, LLC,** | § | |
| **KRISTI SMOOT,** | § | |
| **KELLY SMOOT, and** | § | |
| **TEXAS WINDSTORM** | § | |
| **INSURANCE ASSOCIATION,** | § | |
| | § | |
| **Defendants.** | § | **JURY TRIAL DEMANDED** |

**INDIVIDUAL AND COLLECTIVE ACTION COMPLAINT
UNDER THE FAIR LABOR STANDARDS ACT**

**NATURE OF THE ACTION**

1. Plaintiff brings this civil action pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* (the "FLSA" or the "Act") on behalf of himself and on behalf of all those similarly situated, to recover unpaid back wages (29 U.S.C. § 211(a)), an additional equal amount as liquidated damages (29 U.S.C. § 216(c)), attorneys' fees and costs (29 U.S.C. § 216), and pre- and post-judgment interest.

2. Defendants began violating the FLSA in or before September 2017 by not paying their misclassified insurance adjusters for any of the overtime hours they worked providing services to Texas Windstorm Insurance Association ("TWIA").

3. Plaintiff, as the putative collective/class representative, seeks certification of this suit as a collective action on behalf of all current and former misclassified insurance adjusters of Defendants described, referenced and identified below, who worked for Defendants

performing work for TWIA as a "inside claims examiner," "desk adjuster," "1099 adjuster," "independent adjuster," "independent adjuster manager," "customer service representative," or "litigation examiner," or who have performed duties similar to the duties performed by the Plaintiff for TWIA (collectively referred to as the "Similarly Situated Misclassified Contractors").

## **THE PARTIES**

4.    **Plaintiff Joel Galarza** ("Plaintiff Galarza") is a citizen of the State of Texas. He resides at 98 Resaca Retreat Dr., Los Fresnos, TX 78566. Plaintiff Galarza was hired by Defendants in September 2017 as a misclassified independent contractor performing property claims adjusting, estimating, and/or scoping services for Defendants' customer, Texas Windstorm Insurance Association.  He was so employed until August 2019.

5.    **Defendant Texas Windstorm Insurance Association** ("TWIA"), is a Texas domestic insurance company created by the Texas Legislature in 1971 through the Texas Sunset Act to engage in the business of insurance in the counties subject to hurricane damage. It does not have a registered agent on file with the Texas Secretary of State, and may be served by serving the president, an active vice president, secretary, or attorney in fact at the home office or principal place of business of the company. The Texas Windstorm Insurance Association's principal place of business is 5700 S. MoPac Expressway, Building A, Austin, TX 78749.

6.    **Defendant One Call Claims, LLC** ("One Call Claims") is a corporation that is incorporated under the laws of the State of Alabama and doing business in the Western District of Texas, Austin Division. One Call Claims has its principal place of business in the State of Arizona. Defendant may be served with process by serving its registered

agent, Robert L. Evans, at 3688-B Airport Boulevard, Suite 255, Mobile, AL 36608, or wherever else he may be found.

7.    **Defendant Kelly Smoot** ("Kelly Smoot") is an individual and CEO and President of One Call Claims, LLC. Mr. Smoot may be served with process by delivering a copy of the Summons and Complaint to him at his office located at 3688-B Airport Boulevard, Suite 255, Mobile, AL 36608, or wherever else he may be found.

8.    **Defendant Kristi Smoot** ("Kristi Smoot") is an individual and Owner and President of One Call Claims, LLC. Ms. Smoot may be served with process by delivering a copy of the Summons and Complaint to her at her office located at 3688-B Airport Boulevard, Suite 255, Mobile, AL 36608, or wherever else she may be found.

9.    Defendants One Call Claims, TWIA, Kelly Smoot, and Kristi Smoot are collectively referred to as the "Defendants."

## JURISDICTION AND VENUE

10.    Jurisdiction is proper in this court pursuant to 28 U.S.C. §1331 (federal question jurisdiction) and 29 U.S.C. § 216(b) (the FLSA).

11.    Venue is proper in the Western District of Texas, Austin Division, because Defendant TWIA is located there and a substantial part of the events and/or omissions giving rise to the claims made the basis of the lawsuit occurred there.

12.    Defendants One Call Claims and TWIA were employers of Plaintiff and all other Similarly Situated Misclassified Contractors within the meaning of the FLSA.

## INDIVIDUAL LIABILITY

13.    At all relevant times, the Smoots acted and act directly in the interest of One Call Claims in relation to its misclassified independent contractors.  Thus, they were and are an

additional "employer" of Plaintiff and others similarly situated, within the meaning of Section 3(d) of the FLSA (29 U.S.C. § 203(d)), and is jointly, severally, and individually liable for the unpaid wages, liquidated damages, and attorneys' fees and costs along with One Call Claims and TWIA.

14.    Upon information and belief, Kelly and Kristi Smoot exercised operational control of One Call Claims by, among other things, controlling the companies' finances and negotiating the contracts with Defendants' customers.

15.    Upon information and belief, Kelly are Kristi Smoot are the ultimate decision makers with respect to the classification and pay rates that Plaintiff and all others Similarly Situated were paid.

16.    Kelly and Kristi Smoot had the authority to hire and fire Plaintiff and the other Similarly Situated Misclassified Contractors.

17.    Upon information and belief, Kelly and Kristi Smoot also maintained employment records for Plaintiff and the other Similarly Situated Misclassified Contractors, including pay records, records of personal contact information, etc.

**ENTERPRISE AND INDIVIDUAL FLSA COVERAGE**

18.    At all relevant times, One Call Claims and TWIA have engaged in related activities performed through unified operation or common control for a common business purpose; have employees engaged in interstate commerce or in the production of goods or services for interstate commerce, or employees handling, receiving, selling or otherwise working on goods or material that have been moved in or produced for interstate commerce; and have an annual gross volume of sales made or business done of not less than $500,000. One Call Claims and TWIA, therefore, constitute an enterprise engaged in interstate

commerce or in the production of goods or services for interstate commerce within the meaning of the FLSA (29 U.S.C. §203(r) & (s)).

19.    In addition, in connection with their employment with the Defendants, Plaintiff and all others similarly situated, engaged in interstate commerce within the meaning of the FLSA (29 U.S.C. §§ 206(a) & 207(a)(1)).

## JOINT EMPLOYER FACTS

20.    One Call Claims and TWIA are an integrated enterprise and joint employers of Plaintiff, and other Similarly Situated Misclassified Contractors.

21.    Defendants hired Plaintiff in September 2017 and required him to sign an Independent Contractor Agreement with Defendant One Call Claims, attaching as an Exhibit Plaintiff's assignment with Defendant TWIA.  *See* **Exhibit 1**, which is attached and incorporated by reference.

22.    Plaintiff and other Similarly Situated Misclassified Contractors were instructed that "Adjuster[s] [are] being temporarily engaged as Independent Contractor[s] to provide adjusting services."  *See* **Exhibit 1**, which is attached and incorporated by reference.

23.    The Affidavits signed by Plaintiff and other Similarly Situated Misclassified Contractors during the scope of their employment listed them as the "Authorized Representative of Texas Windstorm Insurance Association."  *See* **Exhibit 2**, which is attached and incorporated by reference.

24.    The paystubs given to Plaintiff (and other Similarly Situated Misclassified Contractors) while working as misclassified independent contractors were issued by One Call Claims but also identified TWIA.  *See* **Exhibit 3**, which is attached and incorporated by reference.

25.   While employed by Defendants, Plaintiff (and others similarly situated) would receive instruction and direction from Chip DeVilbiss, the Litigation Manager for Defendant TWIA, Randy Hanks, the Property Supervisor for Defendant TWIA, and Kati Summers, Property Supervisor for Defendant TWIA regarding the specific instructions for their day to day tasks and other matters that related directly to adjusting claims.

26.   Plaintiff and other Similarly Situated Misclassified Contractors would receive instruction from Kelly Urbanic, a Litigation Manager for Defendant One Call Claims, Tom Byrem, the Account Representative for Defendant One Call Claims, and Gilbert Garcia, a Supervisor for Professional Staffing Services, which is a competing vendor that also officed at Defendant TWIA's location.

27.   TWIA provided Plaintiff and the other Similarly Situated Misclassified Contractors all materials, equipment and supplies to perform their work. More particularly, TWIA provided each employee with a dedicated TWIA e-mail addresses, a computer, telephone, assigned workstation, desk, chair, paper, badge and other miscellaneous office supplies.

28.   Plaintiff was required to always wear his TWIA Badge, which contained his picture, name, and TWIA's logo.

29.   After arriving on a deployment, Plaintiff and others Similarly Situated were required to attend an orientation led by TWIA. Plaintiff and others Similarly Situated were also required to complete TWIA's certification process before beginning their employment. *See* **Exhibits 4 and 5**, which are attached and incorporated by reference.

30.   TWIA made the decisions regarding how Plaintiff and others Similarly Situated were paid, including the amount of their day rate. *See* **Exhibit 6**, which are attached and incorporated by reference.

31.     Plaintiff and other Similarly Situated Misclassified Contractors were provided an Organizational Chart for their work with TWIA in Texas that showed the management and reporting structure.

32.     TWIA controlled and directed the day to day tasks of Plaintiff and the other Similarly Situated Misclassified Contractors, and TWIA employees had the power to hire and fire One Call Claims employees or contractors. Plaintiff and the other Similarly Situated Misclassified Contractors were interviewed by TWIA employees, such as Chip Devilbiss (TWIA's Litigation Manager), who would make the ultimate decision regarding hiring and placement.

33.     TWIA employees had the discretion to release Plaintiff and other similarly situated from work early and would direct them to make up their time.

34.     Upon information and belief, TWIA also maintained employment records.

35.     TWIA controlled Plaintiff and other Similarly Situated Misclassified Contractor's schedule and hours because TWIA controlled the hours of operation (and any holiday closures) of their office in Austin. These types of scheduling issues were confirmed through TWIA employees.

36.     More specifically, the Assignment given to Plaintiff and other Similarly Situation Misclassified Contractors stated that the "Duration of assignment is determined by TWIA," and "All tardiness/absences are to be immediately communicated by phone call…to your TWIA direct report." *See* **Exhibit 7**, which is attached and incorporated by reference.

37.     TWIA's dissatisfaction with the work of adjusters ultimately controlled their decision to terminate certain individuals.

Case 1:20-cv-00808-RP     Document 1     Filed 07/31/20     Page 8 of 16

38.  Upon information and belief, TWIA even maintained a "Code of Conduct" that applied to Plaintiff and others similarly situated.

39.  Plaintiff Galarza at all times reported to Chip DeVilbiss who is a TWIA employee; upon information and belief, the other Similarly Situated Misclassified Contractors were also listed as reporting directly to TWIA employees.

## BACKGROUND AND STATEMENT OF CLAIMS

40.  There is a collective/class of other insurance adjusters who performed work similar to Plaintiff and were subject to the same illegal pay practices.

### A.    Galarza and Others Hired As Misclassified 1099 Independent Contractors.

41.  As further detailed above, Defendants employed Plaintiff Galarza as an "independent contractor" from approximately September 2017 to August 2019.

### B.    Plaintiff And Others Similarly Situated Are Clearly Employees.

42.  The Defendants hired Plaintiff and the other Similarly Situated Misclassified Contractors and supervised their work.

43.  Defendants supervised and directed Plaintiff and the other Similarly Situated Misclassified Contractors' work as it related to adjusting insurance claims by the claims adjusters and litigation examiners in TWIA's office facilities.

44.  Plaintiff and the other Similarly Situated Misclassified Contractors performed their work in TWIA office facilities for the majority of the relevant time period.

45.  Plaintiff and the other Similarly Situated Misclassified Contractors were required by Defendants to comply with instruction about when, where, and how their work was to be done.

46.  Plaintiff and the Similarly Situated Misclassified Contractors were required to seek

approval from their TWIA supervisors when they were going to be absent all or part of a day or requesting time off.

47.    The services provided by Plaintiff and the other Similarly Situated Misclassified Contractors were integrated into Defendants' business operation.

48.    All services provided for Defendants by Plaintiff and the other Similarly Situated Misclassified Contractors were required by Defendants to be performed by them personally.

49.    Plaintiff and the other Similarly Situated Misclassified Contractors did not have the capability or authority to hire, supervise, or pay assistants to help them perform the services that they were being paid to perform.

50.    The relationship between Defendants and Plaintiff (and the other Similarly Situated Misclassified Contractors) was a continuing relationship.

51.    Defendant TWIA set all days and hours of work for Plaintiff and the other Similarly Situated Misclassified Contractors and required that such work be performed at TWIA's place of business only.

52.    Plaintiff and the other Similarly Situated Misclassified Contractors were prohibited from setting their own work schedule and were punished for missing work. *See* **Exhibit 7**, which is incorporated by this reference.

53.    Plaintiff and the other Similarly Situated Misclassified Contractors were required by Defendants to devote their full time to their job at TWIA's place of business and were prohibited from working for competitors.

54.    Defendants required Plaintiff and the other Similarly Situated Misclassified Contractors to provide reports of their activity and performance if they worked on weekends.

55. TWIA provided Plaintiff and the other Similarly Situated Misclassified Contractors all materials, equipment and supplies to perform their work.

56. More particularly, TWIA provided each employee with a dedicated TWIA e-mail addresses, a computer, telephone, assigned workstation, desk, chair, paper, badge and other miscellaneous office supplies.

57. Plaintiff and the other Similarly Situated Misclassified Contractors had no investment in the facilities where they were required to perform their jobs.

58. Plaintiff and the other Similarly Situated Misclassified Contractors had no opportunity to realize either a profit or a loss, other than their non-guaranteed wages.

59. Plaintiff and the other Similarly Situated Misclassified Contractors did not and were not able to make their services available to the general public.

60. Plaintiff and the other Similarly Situated Misclassified Contractors were subject to termination for reasons other than nonperformance of contract specifications, including, but not limited to, excessive tardiness and excessive requests for time off.

61. Plaintiff and the other Similarly Situated Misclassified Contractors were able to terminate their relationship with Defendants without incurring liability for failure to complete a job.

62. Plaintiff and the other Similarly Situated Misclassified Contractors were, therefore, employees of Defendants, and not independent contractors.

**C.    Improperly Paid An Invalid Day Wage.**

63. For their work as misclassified "contractors," Plaintiff and the other Similarly Situated Misclassified Contractors were paid a non-guaranteed (and invalid) day rate wage, with no additional compensation for overtime on hours in excess of forty (40) hours in a workweek.

64.   Plaintiff and other Similarly Situated Misclassified Contractors were not offered health insurance or any other benefits from Defendants.

65.   Plaintiff and the other Similarly Situated Misclassified Contractors were required to work specific and set hours, which significantly exceeded forty (40) hours per workweek. Plaintiff (and other Similarly Situated Misclassified Contractors) typically worked six to seven days per week throughout his employment, regularly working between 20 and 30 hours of overtime per week.

66.   Defendants did not keep records of the hours Plaintiff and the other Similarly Situated Misclassified Contractors worked.

67.   Defendants made no payroll tax or other withholdings from the day rate wage paid to the Plaintiff, or other Similarly Situated Misclassified Contractors, and reported their income to the IRS by Form 1099 instead.

68.   Plaintiff's day rate (and that of other Similarly Situated Misclassified Contractors) was docked if he missed a partial day of work.

69.   Defendants made no guaranteed minimum pay per week, such that Plaintiff and the other Similarly Situated Misclassified Contractors were paid only when they worked, and with no minimum workweek being guaranteed.

70.   Plaintiff and other Similarly Situated Misclassified Contractors were not guaranteed any specific number of paid hours in any workweek and they were not paid on a salary basis.

71.   Defendants paid Plaintiff and the other Similarly Situated Misclassified Contractors on a non-guaranteed (and invalid) daily rate of pay, and overtime would be due at a rate of one and one-half the regular rate of pay for any overtime hours worked in excess of forty (40) hours in a workweek.

72.   Notwithstanding the fact that Plaintiff and the other Similarly Situated Misclassified Contractors were paid under an invalid day rate system that did not meet the salary basis standard, Defendants never paid Plaintiff or any other Similarly Situated Misclassified Contractors any overtime premiums.

73.   Defendants knew they were required by the FLSA to pay an additional one and one-half premium rate for the overtime work of Plaintiff and the other Similarly Situated Misclassified Contractors.

74.   Defendants willfully failed to pay the Plaintiff and the other Similarly Situated Misclassified Contractors any overtime.

75.   The failure to pay overtime was a violation of the FLSA, including §§ 207(a) and 15(a)(2).

## MISCLASSIFIED INDEPENDENT CONTRACTOR
## CLASS/COLLECTIVE ACTION ALLEGATIONS

76.   Plaintiff hereby adopt and incorporate by reference all of the foregoing paragraphs, allegations and Exhibits, as if set forth herein again.

77.   There is a collective/class of other insurance adjusters who have performed work similar to Plaintiff and were subject to the same illegal pay practices.

78.   Plaintiff and the Similarly Situated Misclassified Contractors were paid under an invalid non-guaranteed day rate system, without any compensation for overtime worked, thus requiring overtime due at a rate of an additional one and one-half times the regular rate of pay for all hours worked in excess of forty (40) hours in each workweek.

79.   Plaintiff and the Similarly Situated Misclassified Contractors were not guaranteed any specific number of paid days in any workweek and they were not paid on a salary basis.

80.   Plaintiff and the Similarly Situated Misclassified Contractors have consistently worked

more than forty (40) hours in most workweeks since at least September 2017.

81.    Plaintiff and the Similarly Situated Misclassified Contractors have not been paid for overtime at one and one-half times the regular rate of pay for hours worked in excess of forty (40) hours in most workweeks since at least September 2017.

82.    Plaintiff and the Similarly Situated Misclassified Contractors are entitled to payment of overtime at the rate of an additional one and one-half times their regular rate of pay for the time period of approximately September 2017 to the present.

83.    Plaintiff and the Similarly Situated Misclassified Contractors of Defendants on whose behalf this lawsuit is brought include all present and former misclassified independent contractors of Defendants who have held the positions of "inside claims examiner," "desk adjuster," "1099 adjuster," "independent adjuster," "insurance adjuster," "independent adjuster manager," "customer service representative," "litigation examiner" or who have performed duties similar to the duties performed by the Plaintiff for TWIA.   These individuals have been subject to the same policies and practices as the Plaintiff regarding payment of an invalid day rate, and non-payment of overtime wages at an additional one and one-half times their regular rate of pay.

84.    Defendants have violated 29 U.S.C. §207 of the FLSA by failing to pay the Plaintiff, and the other Similarly Situated Misclassified Contractors, overtime compensation required by the FLSA in workweeks in which they worked in excess of forty (40) hours.

85.    Defendant's violations have been willful.

86.    There are questions of law and fact common to the class/collective.

87.    The claims or defenses of the representative, Plaintiff Galarza, are typical of the claims or defenses of the class/collective.

88.     The representative, Plaintiff Galarza, will fairly and adequately protect the interests of the collective/class.

89.     Counsel for the Plaintiff, Starzyk & Associates, P.C., has conducted significant investigation as to potential claims and parties in this case.

90.     Prosecuting this case as a class/collective action for similarly situated employees who have been unlawfully denied overtime wages will promote judicial efficiency and will best protect the interest of the class/collective members.

91.     There are no conflicts of interest among the class/collective members.

92.     Counsel for the Plaintiff, Starzyk & Associates, P.C., is knowledgeable and experienced in the field of employment law (specifically including overtime claims under the FLSA), class/collective actions and complex litigation, and can and will fairly and competently represent the interests of all class members.

93.     Counsel for Plaintiff has and will commit the human and financial resources necessary to represent the class/collective.

94.     Plaintiff's written Consent to this action is attached as **Exhibit 8** and incorporated by this reference.

**CAUSE OF ACTION:**
**MISCLASSIFIED INDEPENDENT CONTRACTOR UNPAID OVERTIME**
**- FAIR LABOR STANDARDS ACT (FLSA)**
**(INDIVIDUAL AND CLASS/COLLECTIVE ACTION)**

95.     Plaintiff hereby adopts and incorporates by reference all of the foregoing paragraphs, allegations and Exhibits, as if set forth herein again.

96.     Plaintiff and the other Similarly Situated Misclassified Contractors were not paid on a salary basis.

97.     Plaintiff and the other Similarly Situated Misclassified Contractors are entitled to

overtime at a rate of an additional one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours per workweek.

98.  Plaintiff and the other Similarly Situated Misclassified Contractors have worked in excess of forty (40) hours in most workweeks since at least September 2017.

99.  Defendants have failed to pay overtime to Plaintiff, and the other Similarly Situated Misclassified Contractors, for hours worked in excess of forty (40) hours in many workweeks since at least September 2017.

100.  Defendants' failure to pay overtime was willful, thus requiring Defendants to pay interest and liquidated damages.

## JURY DEMAND

101.  Plaintiff demands a trial by jury and is paying the appropriate jury fee contemporaneously with the filing of this Complaint.

## PRAYER

**WHEREFORE**, Plaintiff Joel Galarza, through his undersigned counsel, respectfully requests that this Court:

A.  Upon proper motion, enter an order certifying this suit as a collective action on behalf of all current and former misclassified independent contractors of Defendants performing "adjusting" services for TWIA, regardless of what title they were initially or later given by Defendants, and that notice therefore be distributed to all putative class/collective members;

B.  Order Defendants to make the Plaintiff and the other Similarly Situated Misclassified Contractors whole by paying the overtime wages due;

C.     Order Defendants to pay interest and liquidated damages on all wages owed;

D.     Order Defendants to make proper payments of all Federal withholdings and taxes to the Internal Revenue Service;

E.     Order Defendants to make the Plaintiff, and all others similarly situated, whole by paying monetary damages, liquidated damages, interest and other affirmative relief necessary to eradicate the effects of their illegal actions;

F.     Order Defendants to pay costs and attorneys' fees incurred by the Plaintiff and the other Similarly Situated Misclassified Contractors; and

G.     Grant such further relief as the Court deems necessary and proper.

**RESPECTFULLY SUBMITTED,**

*/s/ Michael A. Starzyk.*
**Michael A. Starzyk**
Texas Bar No. 00788461
Federal ID No. 16926
mstarzyk@starzyklaw.com
**Starzyk & Associates, P.C.**
8665 New Trails, Suite 160
The Woodlands, Texas 77381
Telephone: (281) 364-7261
Facsimile: (281) 364-7533

**Counsel for Plaintiff Joel Galarza
and All Others Similarly Situated**