## Independent Contractor Agreement
## Temporary Assignment

THIS INDEPENDENT CONTRACTOR AGREEMENT ("**Agreement**") is entered into as of the ___ day of _September_, 2017 ("**Effective Date**"), by and between One Call Claims, LLC, an Alabama limited liability company, located at 3688-B Airport Blvd. #235, Mobile, AL 36609 ("OCC"), and _Joel Galarza_ ("**Adjuster**"), whose business mailing address is _____.

### Recitals:

A. One Call Claims, LLC ("OCC") is in the business of providing estimating and insurance adjusting services on an As-Needed basis to various insurance companies located throughout the continental United States.

B. Adjuster is an individual engaged in independent and separate business of offering estimation and insurance adjusting services to insurance companies which need and desire such services.

C. OCC wishes to retain Adjuster's services, and Adjuster wishes to provide such services to OCC and to the insurance companies which are the clients of OCC.

D. The parties intend this document will set forth the terms and conditions of their agreement.

### Agreements:

**NOW THEREFORE** in consideration of the recitals and promises set forth herein and other good and valuable consideration the receipt of which is hereby acknowledged, the parties agree as follows:

**1. Services and Temporary Assignment.** OCC retains Adjuster as an Independent Contractor to perform insurance claims adjusting and estimating services ("Services") in connection with the separate temporary assignment more particularly described in each Exhibit "A" attached hereto ("**Assignment**"). Each Assignment shall be a separate and standalone temporary engagement, and Adjuster agrees to perform the Services and maintain the Performance Requirements of the Assignment as set forth on each such Exhibit "A".

**2. Compensation.**

    a. *Terms of Payment.* In consideration for Services to be performed by Adjuster, OCC will pay Adjuster for provided services in connection with the assignment described in Exhibit "A". In the event the Adjuster shall fail to meet the Performance Requirements, Adjuster's pay may be adjusted at the option of OCC. Payments shall be made via ACH deposit. Payments will be made according to terms outlined in Exhibit "A".

    b. *Expenses.* Adjuster shall be responsible for all personal and professional expenses incurred while performing Services under this Agreement. This includes, but is not limited to, any required state adjusting license fees; business licenses; membership

Initials 

fees and dues; automobile and other travel expenses; meals, apparel, and entertainment; office areas and lodging expenses; insurance premiums; and all salary expenses in the completion of the Assignment.

**3. Independent Contractor Status; Indemnification.** Adjuster is being temporarily engaged as an Independent Contractor to provide adjusting services.

Adjuster shall indemnify and hold OCC and the clients of OCC harmless from any and all damages, claims, settlements, judgments, penalties, fines, damages or loss which may arise from or be related to Adjuster's breach, act or omission, and Adjuster's promise of indemnification shall survive the termination of this Agreement.

**4. Business Permits, Certificates and License.** Adjuster represents and warrants to OCC that Adjuster has complied and will at all times continue to comply with all federal, state and local laws requiring business permits, certificates and licenses required to carry out the Services to be performed under this Agreement.

**5. Term and Termination.** This Agreement shall begin immediately upon execution and shall continue through specified period identified in Exhibit "A" unless earlier terminated as set forth below. Each Assignment shall terminate upon completion, and the parties may enter into new successor Assignments, subject to the terms and conditions of this Agreement, by execution and attachment hereto of a new Exhibit "A." OCC at all times reserves to right to terminate this Agreement upon Adjuster's failure to meet OCC Performance Requirements in connection with any Assignment attached and set forth on Exhibit "A". In addition, OCC reserves the right to terminate this Agreement at any time, with or without cause, upon three (3) days prior written notice to the Adjuster. Either party may terminate this Agreement immediately without prior notice in the event of a material breach of this Agreement, or on account of any act or omission by the other party exposing the terminating party to liability for injury or damages.

**6.   Confidential Information.** Adjuster understands and agrees that OCC has developed confidential information and business relationships which are proprietary and essential to the success, operation and reputation of OCC. During the course of its relationship with OCC, Adjuster will be allowed access to highly sensitive, proprietary, and confidential information of both OCC and its clients, customers, business partners and vendors (past, present and prospective). Such information is hereafter referred to as "Confidential Information" and is defined as including, but not limited to: costs, contract terms, fee agreements, methods of conducting or obtaining business; marketing or business plans, prices or strategies; current or future business opportunities, methods, plans, techniques or procedures; patents, copyrights, product development, licenses, guidelines, computer software programs, source codes and other intellectual property, policies, programs, data, guidelines, quality control issues and evaluations, systems used to administer assignments, training materials and methods, lists of adjusters, employees, independent contractors or business entities, and any and all information which OCC or its clients treat as confidential or proprietary, or which would be reasonably thought of as confidential or of value to a competitor, or which OCC is obligated to keep confidential.


Initials

In signing this Agreement, Adjuster agrees, warrants and represents that Adjuster will not use, copy, transfer or directly or indirectly, divulge, disclose or communicate any Confidential Information which OCC treats as confidential or proprietary, or which would be reasonably thought of as confidential or of value to a competitor, or which OCC is obligated to keep confidential. Adjuster shall exercise the highest degree of care in safeguarding Confidential Information against misuse, loss, theft, or disclosure, and shall take all steps reasonably necessary to maintain the confidentiality of all such Confidential Information. Except for the benefit of and as authorized by OCC, and as necessary to an Assignment, Adjuster shall never, directly or indirectly, copy, use or disclose any Confidential Information for any purpose, or remove any Confidential Information from OCC premises. If Adjuster is legally compelled to disclose any Confidential Information, he will give OCC prompt written notice of such disclosure sufficient for OCC to obtain a protective order or other appropriate relief.

It is expressly understood by Adjuster that the obligations of this paragraph do not cease at the expiration of this Agreement or the termination of Adjuster's relationship with OCC. Adjuster further agrees that any breach of this confidentiality regardless of how seemingly small or accidental, may result not only in the termination of this Agreement, but also in OCC seeking legal recourse against Adjuster. Such legal recourse may include, but not be limited to, injunctive relief, direct and indirect damages and recovery of attorney's fees and other costs of litigation.

In addition to the Confidentiality agreements above, the Adjuster agrees to read, acknowledge and adhere to the Carrier specific confidentiality statements outlined in Exhibit "B".

7.  **Promise Not to Solicit.** Adjuster understands and agrees that the business relationships which OCC has developed with insurance companies, clients, vendors and customers are proprietary to OCC and essential to OCC's continued business success. Adjuster further understands and agrees that in the course of performing Services under this Agreement, Adjuster shall be allowed access to the business relationships, Confidential Information and other matters proprietary to OCC. Accordingly, Adjuster agrees that during the term of this Agreement and for a period of two years after the termination of this Agreement for any reason Adjuster shall not (whether on his own behalf or on behalf of any other person or entity) directly or indirectly:

- Hire, retain or engage the services of any person employed by or otherwise associated with OCC during the term of this Agreement;
- Induce or attempt to induce any person employed or associated with OCC during the term of this Agreement to cease to be employed by, associated with or do business with OCC;
- Induce or attempt to induce any customer, vendor, association, organization or other person or entity to cease doing business with OCC;
- Engage in any business activities which could reasonably be anticipated to lead to the use or disclosure of OCC's trade secrets or Confidential Information, which activities include but are not limited to: employment, consulting, advising, investing or any other direct or indirect interest or association (whether or not for compensation).


Initials

3

**8.     Remedies.** If a party breaches this Agreement, the prevailing party shall be entitled to recover its damages, costs and reasonable attorney's fees whether or not litigation has been filed. Because Adjuster's breach of this Agreement will result in irreparable injury to OCC for which there is no adequate remedy at law, Adjuster agrees that OCC shall be entitled to injunctive relief, both preliminary and permanent (without posting of bond), in addition to any other available remedies for any such breach. In any action, legal or equitable, to enforce this Agreement, the prevailing party may recover the costs and expenses of such action, including attorney fees.

**9.     Governing Law, Jurisdiction and Venue.** This Agreement shall be governed by the laws of the State of Alabama. *Adjuster agrees and consents to personal, exclusive, original jurisdiction and venue in the Federal or State courts located in Mobile County, Alabama, and expressly waives all objections as to jurisdiction and venue.*

**10.     Survival.** Adjuster's, agreements, representations and warranties as set forth in Sections 3, 4, 6, 7, 8, 9, 11, 13 and 14 hereunder shall survive the termination of this Agreement.

**11.     Severability.** If any part of this Agreement is held unenforceable, the rest of the Agreement will continue in full force and effect.

**12.     Notices.** All notices and other communications in connection with this Agreement shall be in writing and shall be considered given as follows: (a) when delivered personally to the recipient's address as stated on this Agreement, or (b) three (3) working days after being deposited in the U.S. mail, with postage prepaid to the recipient's address as stated on this Agreement.

**13.     No Partnership.** This Agreement does not create a partnership relationship. Adjuster does not have authority to enter into contracts on OCC's behalf.

**14.     Entire Agreement.** This Agreement including any exhibits or attachments hereto constitutes the entire understanding between the parties with respect to the subject matter hereof, superseding all prior agreements, negotiations, understandings and representations previously made by and between the parties with respect to such subject matter.

**15.     <u>Counterparts.</u>** This Agreement may be executed in any number of counterparts, and all such counterparts shall be deemed to constitute one and the same instrument, and each of said counterparts shall be deemed an original hereof.


Initials_____

4

ACKNOWLEDGEMENT:

The undersigned Adjuster herby acknowledges that any engagement by OCC of Adjuster to perform insurance claims adjusting services is considered temporary for the particular Assignment and location set forth in Exhibit "A" only. Adjuster further acknowledges that upon completion of the Assignment at the location set forth in Exhibit "A," the Parties may enter into and agree to subsequent Assignments subject to the same terms and conditions by the execution and attachment of a new Exhibit "A." Adjuster shall advise OCC if Adjuster wishes to become eligible for future temporary engagements immediately after the completion of any temporary assignment attached hereto as Exhibit "A."

IN WITNESS WHEREOF, the undersigned have executed and delivered this Agreement as of the day and year first written above.

**ADJUSTER**

Printed Name. Jed Gonzalez

Date. 9/9/17

**One Call Claims**

By _____

Printed Name and Title. _____

Date. _____

Initials _____

5

# One Call Claims Application



**Full Name:** Joel Galarza

**Preferred Nickname:** Joel Galarza

**Street Address:** ▮▮▮▮

**City:** ▮▮▮▮  **ST:** TX  **Zip:** 78566

**Alt Street Address:** ▮▮▮▮

**City:** ▮▮▮▮  **ST:** FL  **Zip:** 30225

**Primary Phone:** ▮▮▮▮  **Alt Phone:** _____

**Email Address:** ▮▮▮▮

**Alt Email Address:** _____

**Emergency Contact Name:** Vicki Feely

**Phone:** ▮▮▮▮  **Relationship:** Spouse

**Bilingual:** [✓] Yes  [ ] No   **Languages:** Spanish

## Roster Choices (please select each roster you would like to be considered for):

- [ ] Administrative
- [ ] Appraisal
- [✓] Field Adjuster - Daily
- [✓] Field Adjuster - CAT
- [ ] Field Adjuster - Commercial
- [✓] Field Inspections
- [✓] File Examiner
- [✓] File Reviewer
- [ ] Flood
- [✓] Inside Adjuster
- [ ] Management
- [ ] Other: _____

**Category:** [✓] Property  [ ] Auto  [✓] Casualty

## Years of Industry Experience:

Describe your industry experience (number of claims worked, types of claims worked, etc):

```
30 wpm
25 yrs of Adjusting Experience
```

**Do you have Flood Experience?** [✓] Yes  [ ] No  **How many flood claims worked?** Only Staff

**NFIP Certified?** [ ] Yes  [✓] No   **If yes, certifcation number:** Not anymore

**NFIP Certification Type:** [✓] Residential  [ ] Small Commercial  [ ] Large Commercial  [ ] RCBAP  [✓] Manufactured

**Estimating Software Experience:**     Levels: 1 = Beginner  2 = Intermediate  3 = Expert

**PROPERTY*:**

| | | | | | | |
|---|---|---|---|---|---|---|
| Xactimate | ☑ Yes | ☐ No | | ☐ Level 1 | ☑ Level 2 | ☐ Level 3 |
| Xactnet Address: | | | | | | |
| Symbility | ☐ Yes | ☐ No | | ☐ Level 1 | ☐ Level 2 | ☐ Level 3 |
| Simsol | ☐ Yes | ☐ No | | ☐ Level 1 | ☐ Level 2 | ☐ Level 3 |
| Other: | | | | | | |

**AUTO*:**

| | | | | | | |
|---|---|---|---|---|---|---|
| CCCONE | ☐ Yes | ☐ No | | ☐ Level 1 | ☐ Level 2 | ☐ Level 3 |
| Mitchell | ☐ Yes | ☐ No | | ☐ Level 1 | ☐ Level 2 | ☐ Level 3 |
| Audatex | ☐ Yes | ☐ No | | ☐ Level 1 | ☐ Level 2 | ☐ Level 3 |
| Other: | | | | | | |

*One Call Claims will perform estimating software proficiency tests

**State Licensing:**

| State | Number | Expiration | State | Number | Expiration |
|---|---|---|---|---|---|
| Alabama | | | Mississippi | | |
| Alaska | | | Montana | | |
| Arizona | | | Nevada | | |
| Arkansas | | | New Hampshire | | |
| California | | | New Mexico | | |
| Connecticut | | | New York | | |
| Delaware | | 1/18/18 | North Carolina | | |
| Florida | [redacted] | 1/18/18 | Oklahoma | | |
| Georgia | | | Oregon | | |
| Hawaii | | | Rhode Island | | |
| Idaho | | | South Carolina | | |
| Indiana | | | Texas | [redacted] | 1/11/18 |
| Kentucky | | | Utah | | |
| Louisiana | | | Vermont | | |
| Maine | | | Washington | | |
| Maryland | | | West Virginia | | |
| Michigan | | | Wyoming | | |
| Minnesota | | | | | |

**Certifications:**
Carrier Specific Certifications (Copies Required)

- [ ] American Family   General Cert #: _____   Farm/Ranch Cert #: _____
- [x] TWIA Inside Cert   Profile XT Assessment?   [x] Yes   [ ] No

Other Certifcations (Copies Required):

- [ ] HAAG   [ ] Rope and Harness   [ ] CEA   [ ] OEA

List all other certifications and expiration dates (Copies Required):

*Citizens Property Insurance Corporation Certified*

Have you ever been convicted of a felony?   [ ] YES   [x] NO
Explanation of conviction:

**Acknowledgement**

I, _Joel Galvez_ (printed name), certify that all of the information submitted on this application is accurate and truthful. Any misstatement of material facts will disqualify me from consideration.

Please Note: Nothing on this application is intended to create or imply a contractual relationship. Appplicant understands that submission of this document is strictly for consideration only.

Signature: _____   Date: 9/4/17
Printed Name: _____

2017 OCC Application                                                               OCC17-03TM



# ONE CALL CLAIMS

## CONFIDENTIALITY AGREEMENT

One Call Claims requires all staff and contracted personnel that are providing services to One Call Claims on behalf of One Call Claims to read, acknowledge and agree with the special provision listed below:

**1.0**   SPECIAL PROVISIONS RELATING TO PERSONAL DATA OF ONE CALL CLAIMS PERSONNEL AND ONE CALL CLAIMS CUSTOMERS

In the event Company has or in the course of performance under this Agreement will Process One Call Claims Information that includes Personal Data regarding One Call Claims current, former or prospective Customers or One Call Claims Personnel, then Company and its employees, officers, directors, agents, contract workers and/or others acting on its behalf or under its control may not Process Personal Data except as required for purposes of fulfilling the express purposes of this Agreement. Without limiting the requirements of this Agreement, the special provisions set forth below will apply to Personal Data regarding One Call Claims Customers and One Call Claims Personnel.

    1.1   **Privacy Laws.** Any Personal Data Processed by the Company in the course of performing its Services under this Agreement or as part of any deliverable or other information provided to One Call Claims will be Processed and protected in accordance with all applicable Privacy Laws. Company expressly warrants that its Processing of Personal Data will comply with all applicable Privacy Laws. Company will at all times perform its obligations under this Agreement in such a manner as to not, by its actions, or inaction contrary to this Agreement, cause One Call Claims to be in violation of applicable Privacy Laws and/or any other applicable laws.

    1.2   **Ownership and Information Integrity.** All Personal Data Processed by the Company is and will remain the exclusive property of One Call Claims. Company will Process Personal Data only for the benefit of One Call Claims and only to the extent strictly necessary to perform its obligations under this Agreement, or as otherwise required by law. Company may not otherwise use or modify the Personal Data, merge it with other data or information, commercially exploit it, disclose it or take any other actions that may in any manner adversely affect the integrity, security or confidentiality of such Personal Data, other than for purposes of performance under this Agreement or as otherwise directed by One Call Claims in writing. No systems or One Call Claims Information may be reproduced in any form by any means, whether electronic, mechanical or otherwise, including information storage and retrieval systems, without prior written permission from One Call Claims and then only for use for the purpose for which Company is given access under this Agreement.

    1.3   **Responsibility and Safeguards.**
        a. Company will be fully responsible for any unauthorized Processing of Personal Data in

any physical, electronic or other form. Without limitation, Company will employ administrative, physical, and electronic safeguards (including safeguards against Malicious Code and other disabling or damaging codes) that (i) prevent the unauthorized Processing of Personal Data of One Call Claims Customers or One Call Claims Personnel, and (ii) meet or exceed industry standards, as set forth in Section 2.2 regarding such safeguards. Particular requirements of this Section 11.3 may be substituted or waived by One Call Claims in writing upon consultation with Company, referencing this Exhibit.

b. In the event of a change in Privacy Law that is applicable to One Call Claims and that affects Company's Processing of Personal Data hereunder, One Call Claims shall notify Company thereof in writing, and Company shall undertake good faith efforts to implement changes to its Processing of Personal Data that are reasonably necessary to comply with such changes in Privacy Law. In the event that Company is unable to implement such changes or is unable to do so within a reasonable time, the parties shall cooperate in good faith to wind down Company's Processing of such Personal Data in order to ensure that Company is not processing any Personal Data in violation of Privacy Law.

Measures the Company will take include, without limitation, the following:

(1) <u>Delineation and Identification of Personal Data</u>. Taking all necessary steps and implementing all appropriate processes to delineate and identify Personal Data for special handling within Company's organization, including without limitation supplemental controls over certain types of Personal Data more particularly regulated by Privacy Laws and with reference to requirements in One Call Claims Security Policies and Standards, such as the limitation on use of SSN's and related government/national identification numbers, and, where applicable, the requirement to obtain consent for the disclosure or other Processing of Sensitive Data.

(2) <u>Secure Servers and Maintenance</u>. Ensuring that all physical, network, host, web and data sites in which Personal Data is stored are (i) maintained solely on Company's premises; (ii) maintained in a secure manner that satisfies all the requirements of this Exhibit; and (iii) identified to One Call Claims upon request.

(3) <u>Restricted Access</u>. Ensuring that Personal Data will be accessible only by authorized Company employees, officers, directors, agents, contract workers and others who have a legitimate business need to access such information, with suitable user authentication, sign-on and access controls that satisfy the requirements of this Exhibit.

(4) <u>Encryption of Personal Data – Transmission</u>. When Processing Personal Data, connections to One Call Claims computing environments and any other transmission via data transmission services or using the Internet will be protected using any of the following cryptographic technologies: IP Sec, SSL, SSH/SCP, PGP, or other technologies

that provide similar or greater levels of security. Encryption algorithms will be of sufficient strength to protect data to commercially reasonable security levels and will utilize industry recognized hashing functions. Transmission may not use any cryptography algorithms developed internally by or for Company. Encryption must be in full compliance with export laws applicable to the One Call Claims Information being transmitted.

(5) <u>Encryption of Personal Data – Storage</u>. Storage, back-up or other retention of Personal Data at rest will be protected using one or more of the encryption technologies approved in this Exhibit for data transmission.

(6) <u>Data Segregation</u>. Maintaining capability to segregate and isolate Personal Data and disable functionality of applications using it, and deploying suitable application controls, firewalls, air-gaps or private circuits so that Confidential Data will not be commingled or corrupted by data from other sources, so it can be returned upon request by One Call Claims or in the event of a Security Incident.

(7) <u>Back-up, Emergency/Disaster Recovery Systems</u>. Applying the requirements of this Section 11 to Personal Data stored on back-up media, servers or repositories, transported, or transmitted, stored or recovered as part emergency or disaster recovery systems maintained by or for Company.

(8) <u>Information Retention and Disposal</u>. (i) Cooperating with One Call Claims in administering its retention requirements concerning One Call Claims Information and employing Record controls required to enable such compliance, and (ii) returning or if authorized by One Call Claims, discarding, destroying and otherwise disposing of Personal Data in a secure manner to prevent unauthorized Processing, exposure of Personal Data consistent with One Call Claims policies and applicable law. (iii) Providing One Call Claims with evidence of certification of destruction of Personal Data.

(9) <u>Media in Transit</u>. Not permitting Personal Data to be transmitted, or stored for transfer and then subsequently transported on physical media such as flash memory, computer hard drives, removable disks, tapes, or other media, without encryption and other reasonable security measures restricting access and use as required by this Exhibit.

(10) <u>Employee Training</u>. At Company's expense, the training for the Company's employees, officers, directors, agents and contract workers and others with access to Personal Data regarding the Company's privacy protection and security obligations under this Exhibit and generally concerning privacy and Personal Data must be documented and provided in writing to One Call Claims annually.

(11) <u>Heightened Security Attention for Employees Handling Personal Data</u>.  Conducting heightened screening and evaluation processes for Company's employees, officers, directors, agents and contract workers and others with access to Personal Data. Examples may include, without limitation, reference and background checks and adding security responsibilities to position qualifications, performance appraisals and compensation programs.

(12) <u>Privacy Assessments</u>.  Once per year, upon request from One Call Claims, conducting or arranging, at Company's expense, reasonable assessments of Company's information, security and protection practices and capabilities relating to Personal Data, solely to confirm that Company's practices and capabilities comply with changes in Privacy Law of which One Call Claims has notified Company pursuant to Section 11.3(b).  Company or its third party provider shall conduct the assessment, and Company shall provide such reports as may be reasonably requested by One Call Claims.  Without limiting the foregoing, One Call Claims may request that Company conduct more than one such assessment in any calendar year, solely to the extent that an additional assessment is necessary to confirm Company's ability to comply with a change in Privacy Law that will go into effect prior to Company's next yearly privacy assessment; provided, however, that any such additional assessment shall be at One Call Claims 's expense if the applicable change in Privacy Law could have been addressed in a previous or later yearly privacy assessment.

(13) <u>Data Transfer to and From Third Parties Outside of Originating Country</u>.  Ensure that no Personal Data (or any other data if restricted by law) is transmitted or permitted to be accessed from outside the country of its origin without determining requirements of and complying with the Privacy Laws in the originating and destination countries.

(14) <u>Periodic Adjustment</u>.  Company shall regularly monitor, evaluate, and adjust, as appropriate, its Security Program in light of any relevant changes in applicable law and regulations, technology, internal or external threats to One Call Claims Data, requests from One Call Claims, and Company's own changing business arrangements, such as mergers and acquisitions, alliances and joint ventures, outsourcing arrangements, and changes to information systems.

(15) <u>System Changes</u>. Company shall make no system change that may adversely affect the security of the system or the security of One Call Claims Information.

IN WITNESS WHEREOF, the parties by their duly authorized representatives hereby have executed this Agreement.

| ONE CALL CLAIMS | CONTRACTOR/EMPLOYEE |
|---|---|
| By: | By: *[signature]* |
| Name: | Name: Joel Galore |
| Title/Division: | Title/Division: |
| Date: | Date: 9/9/17 |

One Call Claims

Drug Screening Authorization Form

ONE CALL CLAIMS

**CONSENT FOR PRE-EMPLOYMENT, RANDOM, OR REASONABLE SUSPICION DRUG TEST SCREENING AND RELEASE COVENANT NOT TO SUE AND INDEMNITY AGREEMENT**

I, _____Jack Galarza_____ (printed name), hereby CONSENT to allow the preferred collection lab of, One Call Claims, LLC, to take a specimen of my hair, urine, or blood and submit it for a pre-employment, random, or reasonable suspicion drug test screening. I FURTHER CONSENT to allow the laboratory testing service to make the results of such screen available to the prospective or current employer, One Call Claims, LLC.

In consideration for such services being rendered on my behalf, I hereby RELEASE the laboratory testing service, its officers, agents, and employees, from any and all claims which I might otherwise have due to such results being made so available. I hereby CONSENT NOT TO FILE ANY ACTION at law or in equity against One Call Claims, LLC, the laboratory testing service, their respective officers, agents or employees in connection with the results of such screen being made so available, and I hereby agree to INDEMNIFY and SAVE HARMLESS One Call Claims, LLC, the laboratory testing service, their respective officers, agents, and employees from all damages, expenses, reasonable attorney's fees, and costs of court which they or any of them may suffer or incur, jointly or severally, due to the results of such screen being made so available.

Authorized Signature: _____

Print name: _____Jack Galarza_____ Date: __9/9/17__

2017 OCC Drug Screening Authorization Form

OCC16-12TM

One Call Claims

Background Check Authorization Form



ONE CALL CLAIMS

**CONFIDENTIAL RELEASE AND WAIVER**

One Call Claims, LLC utilizes MARCUS BACKGROUND INVESTIGATIONS, LLC to conduct background checks for all staff and contract employees.

I _Joel Galarza_ (printed name) understand that MARCUS BACKGROUND INVESTIGATIONS, LLC will conduct a comprehensive public record search of my personal history. I understand that this background search may be repeated at any time at the discretion of One Call Claims, LLC.

I hereby authorize an officer or employee of MARCUS BACKGROUND INVESTIGATIONS, LLC or any other authorized representative of MARCUS BACKGROUND INVESTIGATIONS, LLC bearing this release or a copy of this release, to obtain information in your files pertaining to my employment, education, credit and personal history, including but not limited to, academic achievement, personal history, performance reports, criminal public record searches, reasons for termination, all records contained in any City, County, State, Federal or any political subdivision thereof, including but not limited to, Criminal History information, Uniform Commercial Code, State Motor Vehicle Records, Vital Statistics, Incorporation's, Certifications or licenses, Military Records or any other information.

Authorized Signature: _[signature]_
Print name: _Joel Galarza_ Date: _8/9/17_

Date of Birth: _[redacted]_ Primary Phone Number: _[redacted]_
Social Security Number: _[redacted]_
Driver's License Number: _[redacted]_ Issuing State: _TX_
Street Address: _[redacted]_
City: _Los Fresnos_ ST: _TX_ Zip Code: _78566_

List any issues/details One Call Claims should be aware of regarding background check results:

I own a house in Texas + Florida.

2017 OCC Background Check Authorization Form

OCC17-03TM

# One Call Claims Direct Deposit Form



ONE CALL CLAIMS

## Employee Direct Deposit Authorization

**Instructions**

J U G Insurance Financial Service

This document must be signed by Employees/Independent Contractors requesting automatic deposit of paychecks and retained on file by One Call Claims. Employees/Independent Contractors must attach a voided check for each of their accounts to help verify their account numbers and bank routing numbers.

**Account 1 (Bank Name)** Bank of America

Account 1 type: (●) Checking   ( ) Savings

Bank routing number (ABA number): ███████████

Account number: ███████████

Percentage or dollar amount to be deposited to this account: 100%

**Account 2** (remainder to be deposited to this account) _____

Account 2 type: ( ) Checking   ( ) Savings

Bank routing number (ABA number): _____

Account number: _____

---

**Check image:**

0991
63-27/631 FL
413

DATE _____

PAY TO THE ORDER OF _____ | $ _____

VOID

_____ DOLLARS

Bank of America

FOR ███████████

MP

---

This authorizes ONE CALL CLAIMS, LLC (the "Company") to make credit entries (and, if applicable, adjustment entries), electronically or by any other commercially accepted method, to my (our) account(s) indicated below and to other accounts I (we) identify in the future (the "Account"). This authorizes the financial institution holding the Account to post all such entries. I agree that the ACH transactions authorized herein shall comply with all applicable U.S. Law. This authorization will be in effect until the Company receives a written termination notice from myself and has a reasonable opportunity to act on it.

Authorized signature: _____   Employee ID #: _____

Print name: Joel Gonzalez   Date: 9/9/17

2017 OCC Direct Deposit Authorization Form                                       OCC16-12TM

EXHIBIT A

Assignment

**Position:**  Inside Claims Examiner/Desk Adjuster/Customer Service Representative

**Scope:**  Normal inside claims examining / desk adjusting responsibilities to be determined by Client, including up to 10 hours per day with hours determined by client.

**Assignment Location:**  TWIA – Austin, TX

**Date/Time:**  This contract is good for any deployment to TWIA with OCC.

**Duration:**  Duration of assignment is determined by TWIA

**Pay Rate:**  Rate of pay will be as follows:
$1,200.00 per day – CAT Rate (REVISED 9/6/17)

**Payroll:**  Payroll is paid bi-monthly on the 1st and 15th and pay is 15 days (or one pay cycle) in arrears.

**Dress:**  Business Casual

**Absences:**  *All tardiness/absences are to be immediately communicated by phone call to Tonya Magalei (251-709-3405) and then to your TWIA direct report. There will be zero tolerances for not reporting of tardiness or absences. For each day that this occurs there can be, at the discretion of OCC, a deduction for up to one day's pay to adjuster.*

**Release:**  *In order to be released from any assignment it must be approved by One Call Claims manager and discussed with OCC prior to any discussions with TWIA personnel. Any deviation from this protocol will result in damages being withheld from owed monies and be considered a breach of this contract. The amount of which is not to exceed two weeks of owed compensation and is determined at the discretion of OCC management.*

**Termination:**  Pursuant to contractual guidelines established between the Carrier and OCC, should an Adjuster be terminated, or leave voluntarily, during the first 14 days of the assignment because of the Adjusters failure to perform

_____ Initials

| | |
|---|---|
| | the assignments in a manner satisfactory to the Carrier, Penalties can be assessed against you depending on circumstances and will be at OCC managements discretion. |
| **Smoking:** | TWIA Campuses are non-smoking and smoking is prohibited during working hours. |
| **Personal Calls:** | Personal calls are highly discouraged during work hours and should be limited to designated breaks. |
| **Contractor Agreement:** | Must be completed and returned to: HR@onecallclaims.com prior to deployment. |

One Call Claims Supervisors are:

**Tonya Magalei – Human Resources Manager**
**Cell: 251-709-3405**

**Adjuster**

Joel Galarza
_____
**Printed Name**

*(signature)*
_____
**Signature**

9/9/17
_____
**Date**

**One Call Claims**

_____
**Printed Name**

_____
**Signature**

_____
**Date**

_____ Initials

| Form **W-9** (Rev. December 2014) Department of the Treasury Internal Revenue Service | **Request for Taxpayer Identification Number and Certification** | Give Form to the requester. Do not send to the IRS. |

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.
JUG Financial Insurance Services LLC

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification; check only one of the following seven boxes:
[✓] Individual/sole proprietor or single-member LLC
[ ] C Corporation
[ ] S Corporation
[ ] Partnership
[ ] Trust/estate
[ ] Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ _____

Note. For a single-member LLC that is disregarded, do not check LLC; check the appropriate box in the line above for the tax classification of the single-member owner.

[ ] Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):
Exempt payee code (if any) _____
Exemption from FATCA reporting code (if any) _____
(Applies to accounts maintained outside the U.S.)

**5** Address (number, street, and apt. or suite no.) [redacted]
**6** [redacted]
**7** [redacted]

Requester's name and address (optional)

### Part I — Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 3.

Note. If the account is in more than one name, see the instructions for line 1 and the chart on page 4 for guidelines on whose number to enter.

Social security number: [blank]
or
Employer identification number: [redacted]

### Part II — Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

Certification instructions. You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

Sign Here — Signature of U.S. person ▶ [signed] JUG Financial Insurance Services   Date ▶ 12/29/17

### General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

Future developments. Information about developments affecting Form W-9 (such as legislation enacted after we release it) is at www.irs.gov/fw9.

### Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following:

• Form 1099-INT (interest earned or paid)
• Form 1099-DIV (dividends, including those from stocks or mutual funds)
• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)
• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)
• Form 1099-S (proceeds from real estate transactions)
• Form 1099-K (merchant card and third party network transactions)
• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)
• Form 1099-C (canceled debt)
• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding? on page 2.

By signing the filled-out form, you:
1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),
2. Certify that you are not subject to backup withholding, or
3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and
4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See What is FATCA reporting? on page 2 for further information.

Cat. No. 10231X   Form **W-9** (Rev. 12-2014)